IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT COURT OF OHIO
WESTERN  DIVISION

| | | |
|---|---|---|
| DANNAN MILLER, | ) | **Civil Action No.** 1:16-cv-00535 |
| Plaintiff, | ) | **Judge:** Barrett |
| -vs- | ) | |
| BEST BUY, INC, | ) | |
| Defendant. | ) | |

**PLAINTIFF DANNAN MILLERS'
FIRST AMENDED COMPLAINT**
_____

Plaintiff Dannan Miller alleges as follows in his Complaint against Defendant Best Buy:

## I.    PARTIES

1. Plaintiff Dannan Miller ("Miller") is citizen of Ohio, who worked as an Advanced Repair Agent in the Geek Squad in Defendant Best Buy's Colerain location in Hamilton County, Ohio.

2. Defendant Best Buy, Inc. ("Defendant") is a corporation doing business in the State of Ohio.  Defendant is an employer within the meaning of federal and state employment discrimination laws.

## II.    JURISDICTION

3. This Court has jurisdiction to hear this case pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII").

4. This Court has jurisdiction to hear this case pursuant to 42 U.S.C. § 12101 because Plaintiff asserts claims arising under Title I of the American with Disabilities Act of 1990 and the American with Disabilities Amendments Act of 2008, 42 U.S.C. § 12201 et seq. ("Title I").

5. This Court has jurisdiction to hear this case pursuant to 42 U.S.C. § 12203 because Plaintiff asserts claims arising under Title V of the American with Disabilities Act of 1990 and the American with Disabilities Amendments Act of 2008, 42 U.S.C. § 12203 et seq. ("Title V ").

6. This Court has jurisdiction because Miller filed the required EEOC Charges, and he was issued two (2) right-to-sue letters on February 23, 2016 and March 14, 2016. (See Exhibit A).

### III. VENUE

7. Venue is proper in the Southern District of Ohio, Western Division, under 28 U.S.C. § 1391(b) because all or a substantial part of the events giving rise to these claims occurred in this District and Division.

### IV. FACTS

8. Miller has worked for Defendant for almost 3 years.

9. Miller is an African American male.

10. Miller has diagnosed generalized anxiety disorder and learning disabilities.

11. Miller also has diagnosed degenerative problems in his back and other diagnosed injuries.

12. Miller informed Defendant of these disabilities.

13. Miller had a positive work history, and he was an effective employee.

14. On more than one occasion, Miller asked for gloves as an accommodation because his anxiety disorder made him afraid of germs on the computer.

15. Miller's superiors and co-workers laughed at him.

16. Miller's superiors and co-workers continue to laugh at him.

17. Defendant hired a new manager, Chelsea Sims ("Sims"), in September of 2014.

18. Sims immediately began treating Miller more harshly than other white employees in the Geek Squad.

19. Sims then gave Miller an unfair review because of his race and disability.

20. Miller challenged the unfair review and reported that he was being treated more harshly than other white employees.

21. Defendant then reduced Miller's hours.

22. Miller brought it to Human Resources' ('HR") attention during a round table meeting that other white non-disabled employees were getting the hours they requested, but that he was not getting hours he was requesting because of his race and disabilities.

23. Miller also reported that he felt that he was generally treated more harshly and discriminated against because of his race and disabilities.

24. Miller also brought this to his general manager's supervisors', and Geek Squad manager's attention.

25. Miller needed an accommodation for his learning disability regarding the scheduling software.

26. Some of Miller's managers and supervisors would accommodate Miller, and they would permit Miller to verbally report, text, and email his schedule.

27. Sims started to accommodate Miller in this regard.

28. Then, she started refusing to accommodate Miller in this manner.
29. However, she would allow other employees to report their schedules through text message, emails, and verbal communications.
30. Before Miller reported discrimination to his superiors and HR, he was receiving (40) forty hours a week.
31. After Miller reported discrimination, his hours were significantly reduced to a little more than (20) twenty hours a week.
32. Thus, Defendant began punishing Miller for reporting discrimination in good faith.
33. In the spring of 2015, Miller was officially demoted to part-time after he complained of discrimination and harassment.
34. Defendant then began giving Miller's schedule to a white, non-disabled woman named "Kaitlyn" who was not qualified for the position.
35. In fact, Miller had to train her.
36. Kaitlyn was constantly receiving accommodations for her own schedule because Kaitlyn had a hair salon business.
37. Kaitlyn even cut an employee's hair in the store during business hours.
38. Miller worked harder than Kaitlyn, and he was more qualified.
39. In October, 2015 Miller officially filed an EEOC charge alleging racial and disability discrimination.
40. Almost immediately after Miller filed his EEOC charge, Defendant greatly slashed Miller's hours yet again.
41. In fact, Defendant cut Miller's hours from 20 hours a week to as low as 4 hours in an entire month.

## V.     CLAIMS

### Count I

(ADA and ADAAA Title I -Discrimination)

42. Miller restates all previous paragraphs.

43. Miller has a few disabilities that Defendant was aware of.

44. Miller was capable of performing his work with minor accommodations.

45. Defendant demoted Miller from full time, and replaced him with a less qualified and non-disabled person.

46. Defendant took this adverse employment action with the intent to discriminate against Miller for his disability.

47. As a direct and proximate result of Defendant's conduct as set forth above, Miller has suffered injury and damage for which he is entitled to judgment.

### Count II

(ADA and ADAAA Harassment)

48. Miller restates all previous paragraphs.

49. Defendant knew or should have known about Miller's disabilities, including but not limited to his general anxiety disorder.

50. Miller requested that he wear gloves and receive other accommodations.

51. Defendant made fun of Miller's use of gloves on a regular basis.

52. When Miller reported this harassment and/or discrimination, Defendant continually struck his hours down.

53. Defendant's actions are severe and pervasive.

54. Defendant is currently creating an abusive work environment by only giving Miller several hours a month because of his needs for accommodations.

55. As a direct and proximate result of Defendant's conduct as set forth above, Plaintiff has suffered injury and damage for which he is entitled to judgment.

### Count III

(Title VII – Racial Discrimination)

56. Miller restates all previous paragraphs.
57. Miller is African American.
58. Miller was initially hired full time.
59. Miller is and was at all times qualified for his position.
60. Miller was demoted to part time.
61. However, Miller was later replaced by a white woman, who was much less qualified.
62. White employees for Defendant get preferential treatment in terms of schedules and hours.
63. As a direct and proximate result of Defendant's conduct as set forth above, Miller has suffered injury and damage for which he is entitled to judgment.

### Count IV

(Title VII-Racial Harassment)

64. Miller restates all previous paragraphs.
65. Based on his race, Defendant continually sets out to harass Miller and create an abusive work environment, which interferes with Miller's ability to conduct his work.
66. Miller reported this conduct to Human Resources and his superiors.
67. Since reporting this conduct, the abuse has only become more severe and pervasive.

68. As a direct and proximate result of Defendant's conduct as set forth above, Plaintiff has suffered injury and damage for which he is entitled to judgment.

## Count V

### (Title VII-Retaliation)

69. Miller restates all previous paragraphs.

70. Miller has made good faith, reasonable reports about his superiors' behavior to Defendant.

71. Miller has also filed a good faith EEOC charge.

72. Every time Miller has sought help from management, he has suffered an adverse employment decision.

73. Indeed, when Miller first reported discrimination regarding his race, Defendant cut his hours from full time (with some overtime) to a little over 20 hours a week.

74. When Miller later filed his EEOC charge based on Defendant's racial discrimination, Defendant cut Miller's hours down from around 20 hours a week to less than 10 hours in an entire month.

75. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injury and damage for which he is entitled to judgment.

## Count VI

### (ADA and ADAA-Retaliation)

76. Miller restates all previous paragraphs.

77. Miller has made good faith, reasonable reports about his superiors' behavior to Defendant.

78. Miller has also filed a good faith EEOC charge.

79. Every time Miller has sought help from management, he has suffered an adverse employment decision.

80. Indeed, when Miller first reported discrimination regarding his disability, Defendant cut his hours from full time (with some overtime) to around 20 hours a week.

81. When Miller filed his EEOC charge based on Defendant's disability discrimination, Defendant cut Miller's hours down from around 20 hours a week to less than 10 hours in an entire month.

82. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injury and damage for which he is entitled to judgment.

## Count VII

(Declaratory Relief)

83. Miller restates all previous paragraphs.

84. After Miller filed his EEOC charge and received two right-to-sue letters, Defendant Best Buy adopted a new arbitration agreement.

85. Defendant Best Buy did not have a mandatory meeting discussing the new arbitration policy, which Miller was required to attend.

86. Defendant did not pass out flyers, information sheets, or send mail specifically regarding this new arbitration agreement.

87. There was no way to opt-out of the arbitration agreement.

88. The arbitration agreement was nested within workplace training module.

89. The training module that contained the arbitration agreement also covered other topics, and the training module was not designated for employment policies.

90. Before the training module was released Miller's work hours were cut drastically to approximately 10 hours a month.

91. As a result from this reduction in work hours, Miller was unable to complete the entire training module while at work.

92. Thus, Miller only worked for approximately 20 hours during the Policy's infancy, and never viewed or assented the Policy's terms.

93. Since Miller did not have that ability to complete the training module while at work and received right to sue letters before the agreement and training module was released, the arbitration agreement is unenforceable as to Miller.

94. The arbitration agreement is an issue of law to be decided by a judge.

95. Miller asks this court to rule as a matter of law that the arbitration agreement is void, and any request for arbitration must also be invalidated.

**WHEREFORE,** Plaintiff Miller demands judgment against Defendant and damages as follows:

  a) all lost earnings and benefits;

  b) compensatory damages; in excess of $75,001.00

  c) reinstatement to his former schedule;

  d) punitive damages;

  e) an injunction against Defendant from engaging in any further unlawful employment practices towards Plaintiff;

  f) pre-judgment and post-judgment interest;

  g) attorney fees;

  h) front pay;

  I) reasonable litigation expenses and costs; and

  j) any other legal and equitable relief this Court deems proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

                                    Respectfully Submitted,

                                    /S/Matthew Miller-Novak_____
                                    Matt Miller-Novak (0091402)
                                    Attorney for Plaintiff
                                    GODBEY & ASSOCIATES
                                    708 Walnut Street, Suite 600
                                    Cincinnati, Ohio 45202
                                    P: 513-241-6650
                                    F: 513-241-6649
                                    E: Matt@godbeylaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the foregoing was sent via electronic mail this 30th day of June 2016, to:

David A. Campbell
200 Public Square, Suite 1400
Cleveland Ohio 44114
dacampbell@vorys.com

                                    /S/Matthew Miller-Novak_____
                                    Matt Miller-Novak, Esq. (0091402)